**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| The Travelers Indemnity Company,<br><br>                Plaintiff,<br><br>           -v-<br><br>Admiral Insurance Company,<br><br>                Defendant. | 2:22-cv-5670<br>(NJC) (SIL) |

**OPINION AND ORDER**

NUSRAT J. CHOUDHURY, District Judge:

Plaintiff The Travelers Indemnity Company ("Travelers") brings this action seeking a declaration that Defendant Admiral Insurance Company ("Admiral") is required to defend and indemnify Haugland Energy Group LLC ("Haugland") and PSEG Long Island LLC ("PSEG") in two underlying state court actions arising out of a motor vehicle accident. (Am. Compl., ECF No. 16.) Travelers has moved for partial summary judgment, arguing that, as a matter of law, Admiral has a duty to defend Haugland and PSEG as additional insureds under an Admiral policy issued to Haugland's subcontractor, 4 Cut Development LLC ("4 Cut"), and that such coverage is primary to any coverage under the policy Travelers issued to Haugland. (Pl.'s Mot., ECF No. 28; Pl.'s Mem. ISO MSJ at 1, ECF No. 28-32.) Admiral has cross-moved for summary judgment, arguing that it has no duty to defend or indemnify Haugland and PSEG. (Def.'s Mot., ECF No. 31; Def.'s Mem. ISO MSJ at 1, ECF No. 31-23.) Central to the resolution of the parties' cross-motions is the interpretation of two contracts: the Contract for FEMA 406 Hazard Mitigation Program Construction Services (the "Prime Contract") between Haugland and Long

Island Electric Utility Servco LLC ("LI Electric") (Prime Contract, ECF No. 28-20 through 28-23), and a subcontract between Haugland and 4 Cut (Subcontract, ECF No. 28-8 at 17–33).

For the following reasons, genuine questions of material fact preclude a determination as to whether Haugland and PSEG are additional insureds under the Admiral policy issued to 4 Cut and a determination as to whether PSEG is entitled to additional insured coverage under Section 14 of the Prime Contract. Additionally, Haugland is not entitled to additional insured coverage under Section 14 of the Prime Contract. Accordingly, I deny Travelers' partial Motion for Summary Judgment (ECF No. 28) and grant in part and deny in part Admiral's Motion for Summary Judgment (ECF No. 31).

## JURISDICTION

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the Amended Complaint alleges that the amount in controversy exceeds $75,000 and Travelers, a Connecticut corporation with a principal place of business in Connecticut, and Admiral, a Delaware corporation with a principal place of business in Arizona, are completely diverse in citizenship. (Am. Compl. ¶¶ 3–6.)

This Court also has subject matter jurisdiction over this action pursuant to the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201. The DJA empowers federal courts to declare the rights of parties in ripe cases or controversies by "providing that in a case of actual controversy within its jurisdiction, any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 92 (2d Cir.

2023).[1] "With regards to litigation over insurance coverage in particular, the declaratory judgment mechanism has become the paradigm for asserting jurisdiction despite future contingencies that will determine whether a controversy ever actually becomes real." *Travelers Prop. Cas. Co. of Am. v. Harleysville Worcester Ins. Co.*, 685 F. Supp. 3d 187, 201 (S.D.N.Y. 2023) (citing *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 177 (2d Cir. 2001)). This Court has jurisdiction over this action pursuant to the DJA because Travelers and Admiral dispute Admiral's obligation to defend and indemnify Haugland and PSEG as additional insureds.

Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the accident giving rise to the underlying state court actions took place in this judicial district.

## BACKGROUND

The following facts are not in dispute, unless otherwise noted.

### I. Long Island Lighting Company and PSEG Enter into the Operations Services Agreement.

Following Hurricane Sandy, on December 13, 2013, Long Island Lighting Company ("LI Lighting") entered into an Amended and Restated Operations Services Agreement ("Operations Services Agreement") with PSEG, pursuant to which PSEG assumed the operation and maintenance of LI Lighting's power transmission and distribution system and facilities. (Operations Services Agreement § 4.2(A), ECF No. 28-19.)[2] The Operations Services

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, brackets, and citations.

[2] Admiral disputes the admissibility of the Operations Services Agreement. (Def.'s Opp'n to MSJ at 13–14.) For the reasons stated *infra* Discussion, Section IV.C, the document is admissible.

Agreement states that PSEG is engaged "as an independent contractor (except where [PSEG] is appointed as [LI Lighting's] agent" and designates PSEG as LI Lighting's agent:

> (a) to enter into purchase, rental and other contracts on behalf of and for the account of [LI Lighting] necessary or appropriate to properly operate and maintain the [transmission and distribution ("T&D")] System and to maintain the records of [LI Lighting], and to make such additions and extensions (other than those made pursuant to Section 4.2(A)(7)) hereof to the T&D System and (b) to enter into certain customer related contracts under [LI Lighting's] tariff, all as may be required from time to time by [LI Lighting].

(*Id.* §§ 3.1(B), 4.15; ECF No. 28-19 at 18, 47.) [3]

## II. Haugland and LI Lighting Enter into the Prime Contract.

On September 23, 2015, LI Electric, acting as LI Lighting's agent, entered into the Prime Contract with Haugland. (Prime Contract, ECF No. 28-20 through 28-23.)[4] Pursuant to the Prime Contract, Haugland agreed to provide construction services to carry out mitigation measures to avoid future storm damage. (*Id.*, ECF No. 28-20 at 2; *id.* § 1.1, ECF No. 28-21 at 55.)[5]

Under Section 14 of the Prime Contract, Haugland is required to "procure and maintain . . . Commercial General Liability insurance . . . including . . . Professional Liability providing coverage for premises, bodily injury, [and] property damage . . . ." (*Id.* § 14.1.b, ECF No. 28-20 at 38.) This insurance must "be primary to any other insurance . . . ." (*Id.* § 14.1.j, ECF No. 28-20 at 40.) The Prime Contract further requires that

---

[3] Citations to the Operations Services Agreement refer to ECF pagination. Excerpts from the parties' submissions are reproduced here exactly as they appear in the original. Unless otherwise noted, errors in spelling, punctuation or grammar will not be corrected or highlighted.

[4] The Prime Contract is a lengthy document consisting of six attachments, described in this Opinion, which Travelers filed in four separate filings located at ECF Nos. 28-20 through 28-23. The divisions between each of the four filings are arbitrary. Accordingly, this Opinion cites to the Prime Contract as one document and identifies the relevant section or page number and ECF location.

[5] Citations to the Prime Contract refer to ECF pagination.

> [a]ll liability insurance policies shall name [LI Lighting and LI Electric], their successors and assigns, as well as their agents, servants, representatives, employees, shareholders, successors, and assigns, as additional insured on a primary and non-contributory basis and [Haugland] shall maintain the required coverage, naming the [LI Lighting and LI Electric] as well as their agents, servants, representatives, employees, shareholders, successors, and assigns as an additional insured, for a period of not less than three (3) years from the date the Company accepts the Work. The following language should be used when referencing the additional insured status: Long Island Lighting Company d/b/a LIPA and Long Island Electric Utility Servco LLC, as well as their subsidiaries and affiliates, and their respective successors and assigns shall be named as additional insured.

(*Id.* § 14.3, ECF No. 28-20 at 40.) In other words, under the Prime Contract, Haugland is required to maintain insurance for bodily and personal injury that is primary to any other insurance and that names LI Lighting and LI Electric and their subsidiaries, affiliates, successors, and assigns as additional insureds on a primary and non-contributory basis.

The Prime Contract identifies "Contract Documents"—six documents that along with their attachments and exhibits "as a whole, constitute the entire agreement between the Parties, all of which form one integrated agreement and arrangement for the Contract." (*Id.* at 2, ECF No. 28-20.)[6]

---

[6] The Contract Documents include:

- Attachment 1: Government Requirements Addendum Supplementary Conditions for Contracts pursuant to the Federal Emergency Management Agency ("FEMA");

- Attachment 2: Standards Set Forth in the Federal Common Grant Rule, at 44 CFR Part 13 (Federal Emergency Management Agency ("FEMA"));

- Attachment 3: General Terms And Conditions For Furnishing Labor and Material On A Lump Sum, Unit Price, Time And Materials, Or Cost Reimbursement Basis;

- Attachment 4: Statement of Work for the FEMA 406 Hazard Mitigation Program Construction Services;

### III. Haugland and 4 Cut Enter into the Subcontract.

On September 17, 2018, Haugland subcontracted part of the work identified in the Prime Contract to 4 Cut pursuant to the Subcontract. (Subcontract, ECF No. 28-8 at 17–33.)[7] Under the Subcontract, 4 Cut's flaggers were required to have "Flagger Safety Training" and be "provided . . . with all required PPE, Stop/Slow signs and 2-way radio's." (*Id.* at 19.) The Subcontract also provides that "the Prime Contract in its entirety is incorporated by reference and made part of this Subcontract as though set forth at length . . . ." (*Id.* § 1.1 at 17.) Moreover, the Subcontract states that 4 Cut:

> has carefully examined all documents and plans comprising the Prime Contract and is thoroughly familiar with each of them, and it is expressly agreed and understood that the Prime Contract shall be considered to be a part of this Subcontract in all respects. [4 Cut] is bound unto [Haugland] by the terms of said Contract Documents and will conform to and comply with it and assume toward [Haugland] all the obligations and responsibilities that [Haugland] assumes to Owner in and by the Prime Contract with respect to all aspects of the work called for herein and with respect to all obligations, duties, conditions and requirements related to the entire fulfillment and performance of the Prime Contract. It is expressly agreed and understood that the Prime Contract shall be considered to be a part of this Subcontract in all respects.

(*Id.*) The Subcontract specifically states that 4 Cut "agrees to be bound by all the terms and provisions of the Prime Contract, including but not limited to the administrative and procedural provision, [and] dispute resolution provisions contained in the Contract Documents . . . ." (*Id.* § 1.2 at 17.) Finally, the Subcontract provides that "[i]n the event of any conflict between the

---

- Attachment 5: Pricing Sheet for FEMA 406 Hazard Mitigation Program Construction Services; and

- Attachment 6: Seller's Certificate of Insurance, if applicable.

(*Id.* at 3, ECF No. 28-20.)

[7] Citations to the Subcontract refer to ECF pagination.

provisions of this Subcontract and the Prime Contract, the provisions of this Subcontract shall govern." (*Id.* § 1.3 at 17.)

Section 7 of the Subcontract addresses 4 Cut's insurance obligations. Under Section 7.2, 4 Cut must "comply with the Insurance Requirements 'APPENDIX I' contained within the Prime Contract, which are hereby expressly incorporated by reference herein . . . ." (*Id.* § 7.2 at 23). Section 7.2 also requires 4 Cut to maintain "Comprehensive General Liability insurance . . . for bodily injury, personal injury and property damage . . . ." (*Id.* § 7.2(a) at 23.) Finally, Section 7.3 requires 4 Cut to, "by specific endorsements to its primary comprehensive general liability, . . . cause the following, and any other entity as required by Contractor or Owner, to be named as Additional Insureds contained on 'APPENDIX I.'" (*Id.* § 7.3 at 24.)

There is no "Appendix I" attached to the Subcontract or to the Prime Contract, notwithstanding Section 7.2's reference to Appendix I as a document "contained within the Prime Contract." (*See* Prime Contract at 3, ECF No. 28-20 (not including "Appendix I" in the list of documents contained within the Prime Contract); Subcontract (not containing "Appendix I").) Additionally, the Subcontract does not identify any entities as "Additional Insureds."

Traveler's claim professional, Sharlene Alzate, attests, however, that a separate three-page document that is undated, unsigned, and is labeled "Appendix I" is an appendix to the Subcontract. (*See* Alzate Decl. ¶ 8, ECF No. 28-18.) Alzate asserts that the document is a "true and accurate copy of Appendix 'I' to the Subcontract Agreement" between 4 Cut and Haugland, and that "Travelers received this copy of Appendix 'I' to the Subcontract from Haugland in the course of its investigation of the claim at issue in this litigation." (*Id.*) Admiral disputes the admissibility of Exhibit 15 to the Alzate Declaration. (*See* Def.'s Opp'n to MSJ at 11–12.)

In summary, the Subcontract (1) requires 4 Cut's flaggers to have safety training and the required safety devices, (2) purports to incorporate the Prime Contract by reference, (3) obligates 4 Cut to adhere to all of the obligations that Haugland has to LI Lighting pursuant to the Prime Contract; (4) requires 4 Cut to maintain insurance coverage for bodily injury; and (5) requires 4 Cut to maintain additional insured coverage that is primary to other insurance available to the additional insureds.

## IV. The Travelers Policy to Haugland

From October 31, 2019 through October 31, 2020, Haugland had a commercial general liability insurance policy from Travelers. (Travelers Policy, ECF Nos. 28-2 through 28-5.) The Travelers Policy covers, among other things, bodily injury arising out of accidents during the policy period. (*Id.* at 20, 38, ECF No. 28-2.)[8] The Travelers Policy provides that its coverage is primary, except where it is excess insurance. (*Id.* § IV.4.a., ECF No. 28-2 at 34.) Coverage under the Travelers Policy is excess over "[a]ny of the other insurance, whether primary, excess, contingent or on any other basis, that is available to the insured when the insured is an additional insured, or is any other insured that does not qualify as a named insured, under such insurance." (*Id.* § IV.4(b), ECF No. 28-2 at 34.)

## V. The Admiral Policy to 4 Cut

From August 9, 2019 through August 9, 2020, 4 Cut had a commercial general liability insurance policy from Admiral. (Admiral Policy, ECF No. 28-6 through 28-7.) The Admiral Policy covers, among other things, bodily injury arising out of accidents during the policy

---

[8] Citations to the Travelers Policy refer to ECF pagination. Like the Prime Contract, Travelers filed the Travelers Policy in parts located at ECF Nos. 28-2 through 28-5, and the divisions between the parts appear to be arbitrary. This Opinion cites to the Travelers Policy as one document and identifies the relevant section or page number and ECF location.

period. (*Id.* § I.1.a, ECF No. 28-6 at 9.)[9] The Admiral Policy provides that its coverage is

primary, except where it is excess insurance. (*Id.* § IV.4.a, ECF No. 28-6 at 19.) Insurance under

the Admiral Policy "is primary to and will not seek contribution from any other insurance

available to an additional insured" under the Admiral Policy if the "additional insured is a

Named Insured under such other insurance" and "you have agreed in writing in a contract or

agreement that this insurance would be primary and would not seek contribution from any other

insurance available to the additional insured." (*Id.* at 18, ECF No. 28-7.)

     The Admiral policy is subject to an "Endorsement" that governs "Additional Insured—

Owners, Lessees or Contractors—Scheduled Person or Organization." (*Id.* at 25, ECF No. 28-6.)

Pursuant to the Endorsement, an "additional insured" includes

> [a]ny person or organization that is an owner or manager of real property or
> personal property on which you are performing ongoing operations, or a
> contractor on whose behalf you are performing ongoing operations, <u>but only if
> coverage as an additional insured is required by a written contract or written
> agreement that is an 'insured contract'</u>, and provided the 'bodily injury' . . . <u>first
> occurs . . . subsequent to the execution of the contract or agreement.</u>

(*Id.* (emphasis supplied).) This definition of an additional insured applies only with respect to

liability for bodily injury caused in whole or in party by 4 Cut's acts or omissions, or the acts or

omissions of a party acting on 4 Cut's behalf. (*Id.*)

     In other words, under the Admiral Policy, an additional insured includes a contractor for

whom 4 Cut is working as well as the owner or manager of the property on which 4 Cut is

working if the bodily injury occurred (1) after the execution of a written 'insured contract' that

(2) requires additional insured coverage. Coverage under the Admiral Policy is primary to other

---

[9] Citations to the Admiral Policy refer to ECF pagination. Like the Prime Contract and the
Travelers Policy, Travelers also filed the Admiral Policy in arbitrary parts located at ECF Nos.
28-6 through 28-7. Therefore, this Opinion cites to the Admiral Policy as one document and
identifies the relevant section or page number and ECF location.

insurance available to an additional insured if (1) the additional insured is a named insured under that other insurance and (2) 4 Cut has agreed in writing that its insurance under the Admiral Policy would be primary to that other insurance.

## VI. The Motor Vehicle Accident and Certificate of Insurance

On January 2, 2020, Jean G. Charles ("Charles") and Rosibel Lemus Sagastume ("Sagastume") were injured in a motor vehicle accident at the intersection of Bellmore Avenue and North Jerusalem Road in Hempstead, New York. (ECF No. 28-9 ¶¶ 80–81; ECF No. 28-10 ¶¶ 22–25.) According to the police report of the accident, "the traffic light at the . . . intersection was turned off due to electrical service by PSEG. The intersection was controlled by two PSEG flag men." (ECF No. 28-25 at 1.)

On January 10, 2020, eight days after the motor vehicle accident and more than a year after Haugland and 4 Cut entered into the Subcontract, Construction Risk Partners produced a certificate of liability insurance ("2020 Certificate of Liability Insurance"), which indicates that 4 Cut was covered by commercial general liability insurance and contractual liability insurance under Policy Number CA000031650-02 between August 2, 2019 and August 2, 2020. (ECF No. 28-8 at 33.) The 2020 Certificate of Liability Insurance also states that:

> Haugland . . . as contractor and [LI Lighting and LI Electric], as owner, as well as their subsidiaries and affiliates, their respective successors and assigns, agents, servants, representatives, employees, and shareholders are additional insured as required by written contract. Waiver of subrogation is applicable where required by written contract and allowed by law. Coverage is primary and non-contributory where required by written contract.

(*Id.*)

## VII. Underlying State Court Actions

Charles and Sagastume filed separate personal injury lawsuits in state court and, after a series of amendments, named PSEG as a defendant. (ECF No. 28-10; ECF No. 28-15.) Both

actions were joined for discovery and trial purposes. (ECF No. 28-12.) On August 4, 2021, PSEG filed a third-party complaint against Haugland and 4 Cut in both actions. (ECF Nos. 28-13–14.)

On April 28, 2021, Travelers tendered the defense and indemnification of Haugland and PSEG in the underlying state court actions to Admiral and 4 Cut. (ECF No. 28-16.) Admiral denied the tender in a June 10, 2021 letter. (ECF No. 28-26.) Travelers retendered the defense and indemnification of Haugland and PSEG to Admiral on August 5, 2021 (ECF No. 28-27), and on August 6, 2021, Admiral accepted the retender (ECF No. 28-28). In a series of emails dating September 30, 2021 through October 6, 2021, Admiral then denied the retender. (ECF No. 28-29.) On June 9, 2022, Travelers agreed to defend and indemnify PSEG in connection with the underlying state court actions. (ECF No. 28-31.)

## PROCEDURAL HISTORY

On September 22, 2022, Travelers filed the initial complaint in this action. (ECF No. 1.) On November 28, 2022, Admiral answered the complaint. (ECF No. 8.) On February 8, 2023, Travelers sought leave to amend the complaint. (ECF No. 15.) Magistrate Judge Steven I. Locke granted leave to amend on March 15, 2023, and Travelers filed the Amended Complaint that same day. (Elec. Order, Mar. 15, 2023; Am. Compl.) The Amended Complaint seeks a declaration that Haugland and PSEG are additional insureds under the Admiral Policy, and that such coverage is primary and non-contributory with any coverage provided by the Travelers Policy. (Am. Compl. ¶¶ 33–35.)

Admiral answered the Amended Complaint on April 4, 2023. (ECF No. 17.) On August 11, 2023, both parties filed letters requesting pre-motion conferences regarding anticipated

11

motions for summary judgment. (ECF Nos. 19, 20.) The parties filed responses to each other's letters on August 18, 2023. (ECF Nos. 21, 22.)

On October 11, 2023, this case was re-assigned to my docket. (Notice, Oct. 11, 2023.) On October 27, 2023, I denied the requests with leave to renew because neither party supported its request with a Local Rule 56.1 statement. (Elec. Order, Oct. 27, 2023.) The parties timely submitted renewed letters with Local Rule 56.1 statements. (ECF Nos. 23, 25–27.) On January 24, 2024, I ordered a briefing schedule for the cross-motions for summary judgment. (Elec. Order, Jan. 24, 2024.) The cross-motions were fully briefed and filed on April 3, 2024.

In support of its partial Motion for Summary Judgment seeking a declaratory judgment that Admiral has a duty to defend Haugland and PSEG, Travelers submits a memorandum of law (Pl.'s Mem. ISO MSJ, ECF No. 28-32), the Declaration of Attorney Lisa Szczepanski (Szczepanski Decl., ECF No. 28-1) with attached exhibits (ECF Nos. 28-2 through 28-17), and the Declaration of Sharlene Alzate, a Traveler's claim professional (Alzate Decl., ECF No. 28-18) with attached exhibits (ECF Nos. 28-19 through 28-31). Admiral opposed Travelers' Motion (Def.'s Opp'n to MSJ, ECF No. 29) and Travelers replied (Pl.'s Reply ISO MSJ, ECF No. 30).

Admiral cross-moves for summary judgment seeking a declaratory judgment that Admiral has no duty to defend or indemnify PSEG, Haugland, or any other entity in connection with the underlying state court actions. In support, Admiral submits a memorandum of law (Def.'s Mem. ISO MSJ, ECF No. 31-23), a Local Rule 56.1 statement (ECF No. 31-22), and the Declaration of Attorney Melissa P. Tsynman (Tsynman Decl., ECF No. 31-1) and exhibits attached to that declaration (ECF Nos. 31-2 through 31-21). Travelers opposed the Motion (Pl.'s Opp'n to MSJ, ECF No. 32), and Admiral replied (Def.'s Reply ISO MSJ, ECF No. 33).

## LEGAL STANDARDS

### I.    Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a material question of fact. *Balderramo v. Go N.Y. Tours Inc.*, 668 F. Supp. 3d 207, 219 (S.D.N.Y. 2023) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "A fact is material if it might affect the outcome of the suit under the governing law." *Cunningham v. Cornell Univ.*, 86 F.4th 961, 980 (2d Cir. 2023). A dispute of "material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In order to defeat summary judgment, the non-moving party must set forth sufficient facts showing that there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c). The non-moving party "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Daly v. Westchester Cnty. Bd. of Legislators*, No. 23-1220-CV, 2024 WL 3264125, at *2 (2d Cir. July 2, 2024). "Mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Banes*, 593 F.3d 159, 166 (2d Cir. 2010). A court considering whether summary judgment is appropriate "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Cunningham*, 86 F.4th at 980; *see also Woods v. Centro of Oneida, Inc.*, 103 F.4th 933, 939 (2d Cir. 2024) ("We may find for the movant defendant only if we conclude that on the record presented, considered in the light most favorable to the non-movant, no reasonable jury could find in movant's favor."). If "the party opposing summary judgment propounds a reasonable

conflicting interpretation of a material disputed fact," summary judgment must be denied.

*Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir. 1983).

Where more than one party moves for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *BWP Media USA Inc. v. Polyvore, Inc.*, 922 F.3d 42, 47 (2d Cir. 2019). Therefore, when evaluating Travelers Motion, I draw all reasonable inferences against Travelers; when considering Admiral's cross-Motion, I draw all reasonable inferences against Admiral.

## II.    Contract Interpretation

Under New York law, the interpretation of an unambiguous contract "is a matter of law for the court to decide." *Phila. Indem. Ins. Co. v. Streb, Inc.*, 487 F. Supp. 3d 174, 183 (S.D.N.Y. 2020) (citing *Int'l Multifoods Corp.* v. *Com. Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002)); *Long Island Minimally Invasive Surgery, P.C. v. MultiPlan, Inc.*, 212 N.Y.S.3d 701, 704 (N.Y. App. Div. 2024) ("The threshold question of whether a contract is unambiguous, and the subsequent construction and interpretation of an unambiguous contract, are issues of law within the province of the court.").[10] "Generally, the courts bear the responsibility of determining the rights or obligations of parties under insurance contracts based on the specific language of the policies." *Gilbane Bldg. Co./TDX Constr. Corp. v. St. Paul Fire & Marine Ins. Co.*, 97 N.E.3d 711, 712–13 (N.Y. 2018). A court determining a dispute over insurance coverage looks first to

---

[10] "The parties' briefs assume that New York law controls this dispute, and such implied consent is sufficient to establish choice of law." *Phx. Ins. Co. v. Hudson Excess Ins. Co.*, No. 21-cv-4474, 2023 WL 5048629, at *6 n.10 (S.D.N.Y. Aug. 8, 2023) (citing *Santalucia v. Sebright Transp., Inc.*, 332 F.3d 293, 296 (2d Cir. 2000)).

the language of the relevant insurance policy and gives "unambiguous provisions . . . their plain and ordinary meaning." *Id.*

### III.    Duty to Defend

"The duties to defend and indemnify are separate and distinct; the former is a form of litigation insurance for the insured." *Barney Greengrass, Inc.* v. *Lumbermens Mut. Cas. Co.*, 445 F. App'x 411, 413 (2d Cir. 2011). Under New York law, "the duty of an insurer to defend its insured is 'exceedingly broad' and far more expansive than the duty to indemnify its insured." *High Point Design, LLC* v. *LM Ins. Corp.*, 911 F.3d 89, 94–95 (2d Cir. 2018) (quoting *Cont'l Cas. Co.* v. *Rapid-Am. Corp.*, 609 N.E.2d 506 (1993)); *accord Regal Constr. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 15 N.Y.3d 34, 37 (N.Y. 2010); *Sammy v. First Am. Title Ins. Co.*, 168 N.Y.S.3d 519, 524 (N.Y. App. Div. 2022) ("A duty to defend is triggered by the allegations contained in the underlying complaint, and such duty is 'exceedingly broad.'"). An "insurer will be called upon to provide a defense whenever the allegations of the complaint suggest a reasonable possibility of coverage." *Regal*, 15 N.Y.3d at 37. "This standard applies equally to additional insureds and named insureds." *Id.*

### DISCUSSION

Travelers moves for partial summary judgment on its Declaratory Judgment Act claim for a declaration that Admiral is required to defend Haugland and PSEG as additional insureds under the Admiral Policy issued to 4 Cut, and that such coverage is primary and non-contributory with any coverage provided by the Travelers Policy to Haugland. (*See generally* Pl.'s Mem. ISO MSJ.) Admiral cross-moves for summary judgment, arguing that there is no genuine question of material fact that it is not required to defend and indemnify Haugland and PSEG as additional insureds under the Admiral Policy and seeking a declaration stating so. (Def.'s Mem. ISO MSJ at

1.) I must therefore resolve whether, based on the undisputed facts, Haugland and PSEG are additional insureds under the Admiral Policy.

Under the Admiral Policy, an additional insured includes a contractor for whom 4 Cut is working as well as the owner or manager of the property on which 4 Cut is working "only if" the bodily injury occurred (1) after the execution (2) of a written "insured contract" that (3) requires additional insured coverage. (Admiral Policy at 25, ECF No. 28-6.) The parties' dispute centers around whether the Subcontract constitutes a "written insured contract" that requires 4 Cut to obtain additional insured coverage for Haugland and PSEG. (*Compare* Pl.'s Mem. ISO MSJ at 16–18 (arguing that the Subcontract requires additional insured coverage for Haugland and PSEG) *with* Def.'s Opp'n to MSJ at 10–19 (arguing that "no provision in the [Subcontract] . . . expressly and specifically requires 4 Cut to procure additional insurance coverage" for Haugland and PSEG) *and* Def.'s Mem. ISO MSJ at 2 (same).). The parties also dispute whether Haugland and PSEG are entitled to coverage as additional insureds under the Prime Contract. (*Compare* Def.'s Mem. ISO MSJ at 14 *with* Pl.'s Opp'n to MSJ at 8–9.)

Travelers argues that the Subcontract requires additional insured coverage for Haugland and PSEG for two reasons. First, it contends that Haugland and PSEG are named as additional insureds in Appendix I to the Subcontract and in the 2020 Certificate of Liability Insurance that is attached to the Subcontract. (Pl.'s Mem. ISO MSJ at 16–17.) Second, Traveler's asserts that the Subcontract incorporated by reference the additional insured requirements of the Prime Contract and that 4 Cut assumed those requirements, which require Haugland to obtain commercial general liability insurance covering bodily injury and naming as "as additional insureds on a primary and non-contributory basis" LI Electric and LI Lighting, "as well as their agents, servants, representatives, employees, shareholders, successors, and assigns," prior to the

16

start of any work under the Prime Contract. (*Id.* at 18–20; Prime Contract § 14.1; 14.1.b; 14.3 ECF No. 28-20 at 36, 40.) Travelers also argues that PSEG and Haugland are covered by these requirements by virtue of their relationships to LI Lighting and LI Electric. (Pl.'s Mem. ISO MSJ at 16–17.)

Admiral rejects both arguments and contends that no written agreement—whether the Subcontract or the Prime Contract—requires 4 Cut to obtain additional insured coverage for Haugland or PSEG. (*See, e.g.*, Def.'s Mem. ISO MSJ at 2.) Admiral argues that the document offered by Travelers as Appendix I to the Subcontract is inadmissible as evidence supporting Traveler's Motion, and that therefore, there is no Appendix I to the Subcontract that obligates 4 Cut to obtain commercial general liability insurance naming Haugland and PSEG as additional insureds. Admiral also argues that even if the Subcontract incorporates the additional insured requirements of the Prime Contract, those requirements do not obligate 4 Cut to obtain such coverage for Haugland and PSEG because the specific language of Section 14.3 does not reference Haugland or PSEG by name or use other terms that cover these entities. (*Id.* at 14.)

For the following reasons, genuine questions of material fact preclude a determination that Haugland and PSEG are additional insureds under the Admiral policy issued to 4 Cut and a determination that PSEG is entitled to additional insured coverage under Section 14 of the Prime Contract. I also find that, as a matter of law, Haugland is not entitled to additional insured coverage under Section 14 of the Prime Contract. I therefore deny Travelers' partial Motion for Summary Judgment on its claim for a declaratory judgment that Admiral has a duty to defend. I also grant in part and deny in part Admiral's Motion for Summary Judgment seeking a declaration that Admiral does *not* have a duty to defend, and deny as premature Admiral's

Motion seeking a declaration that it has no duty to indemnify Haugland, PSEG, or any other

party in connection with the underlying state court actions.

**I.      Travelers Cannot Rely on Exhibit 15 to the Alzate Declaration Because it is
        Inadmissible.**

In support of its Motion for Summary Judgment and in opposition to Admiral's cross-

Motion, Travelers argues that there is an Appendix I to the Subcontract, which "requires 4 Cut to

procure and maintain liability insurance naming [LI Lighting] and [LI Electric], *their successors*

*and assigns, as well as their agents, servants, representatives, employees [and] shareholders* [. .

.] as additional insured[s]." (Pl.'s Mem. ISO MSJ at 16 (citing Appendix I ¶ 3, ECF No. 28-24);

Pl.'s Opp'n to MSJ at 2–3, 5–6.) Travelers argues that I should credit the attestation of Sharlene

Alzate that the document titled "Appendix I," which is attached as Exhibit 15 to the Alzate

Declaration, is a true and correct copy of an appendix to the Subcontract titled "Appendix I."

(Pl.'s Mem. ISO MSJ at 17–18; Pl.'s Reply ISO MSJ at 2.) According to Travelers, Exhibit 15 to

the Alzate Declaration is "expressly referenced in the Subcontract," was "obtained from

Haugland, one of the parties to the Subcontract," and the 2020 Certificate of Liability Insurance

"corroborates the authenticity of Appendix I in that it lifts language directly from it." (Pl.'s Mem.

ISO MSJ. at 17–18 (citations omitted).)

Admiral disputes Travelers' reliance on Exhibit 15 to the Alzate Declaration. First,

Admiral notes that Travelers identifies the document as an appendix *to the Subcontract*, but the

plain text of the Subcontract states that "'APPENDIX I' [is] contained within the Prime Contract

. . . ." (Def.'s Opp'n to MSJ at 11 (quoting Subcontract § 7.2, ECF No. 28-8 at 23).) Second,

Admiral observes that "the Prime Contract does not list 'Appendix I' as an enumerated document

made part of the contract" and that "there is no 'Appendix I' contained within, annexed to, or

otherwise made a part of the Prime Contract or the . . . Subcontract." (*Id.*; *see also* Def.'s Mem.

ISO MSJ at 2, 11–12.) Third, Admiral argues that Travelers has not authenticated Exhibit 15 to

the Alzate Declaration as "Appendix I" because the document is not signed or dated and is not

attached to any written contract that is signed and dated. (Def.'s Opp'n to MSJ at 11–12.)

Admiral asserts that Travelers has not identified who created Exhibit 15 to the Alzate

Declaration or when it was created, has not provided an affidavit from either party to the

Subcontract with personal knowledge as to whether the document was part of the Subcontract,

and has not provided any sworn statement by a party with personal knowledge as to the

document. (*Id.* at 12.)

On reply, Travelers argues that Exhibit 15 to the Alzate Declaration is admissible as

Appendix I to the Subcontract and that Admiral "has denied the existence of Appendix I to the

Subcontract while simultaneously citing to the provisions of the Subcontract that explicitly

incorporate Appendix I." (Pl.'s Reply at 2–3.) Travelers also argues that Admiral insinuates that

the Subcontract is ambiguous, and that disputed documents were authenticated in the exact same

manner as Exhibit 15 to the Alzate Declaration in a recent decision of this Court, *Travelers*

*Indemnity Co. of America v. Accredited Surety & Casualty Co., Inc.*, No. 21-cv-7189, 2024 WL

1092681 at *3 (E.D.N.Y. Mar. 13, 2024). (Pl.'s Reply ISO MSJ at 2–4.) Finally, Travelers

contends that Exhibit 15 to the Alzate Declaration "duplicate[s] the exact insurance procurement

provisions from the Prime Contract into a rider . . . incorporated . . . into the Subcontract as

Appendix 'I'." (*Id.* at 9.)

"The evidence submitted on a motion for summary judgment must set forth facts that

would be admissible in evidence if offered at trial." *Platt v. Michaan*, 695 F. Supp. 3d 420, 440

(S.D.N.Y. 2023), *appeal dismissed*, No. 23-7676, 2023 WL 9510839 (2d Cir. Dec. 27, 2023); *see*

*also Grabin v. Marymount Manhattan Coll.*, 659 F. App'x 7, 9 (2d Cir. 2016) ("[A]ny evidence

considered on summary judgment must be reducible to admissible form."). The authentication of

an item of evidence is a "condition precedent" to admissibility. *United States v. Vayner*, 769 F.3d

125, 129–30 (2d Cir. 2014). Rule 901 of the Federal Rules of Evidence ("Fed. R. Ev.") requires a

proponent of an item of evidence to "produce evidence sufficient to support a finding that the

item is what the proponent claims it is." Fed. R. Ev. 901(a). Rule 901 is satisfied by introducing

"sufficient proof so that a reasonable juror could find in favor of authenticity or identification."

*United States v. El Gammal*, 831 F. App'x 539, 542 (2d Cir. 2020) (citing *United States v. Tin*

*Yat Chin*, 371 F.3d 31, 38 (2d Cir. 2004)). "The type and quantum of evidence required is related

to the purpose for which the evidence is offered, and depends upon a context-specific

determination whether the proof advanced is sufficient to support a finding that the item in

question is what its proponent claims it to be." *Vayner*, 769 F.3d at 129. "The proponent need not

rule out all possibilities inconsistent with authenticity, or prove beyond any doubt that the

evidence is what it purports to be." *Id.* at 130. "The ultimate determination as to whether the

evidence is, in fact, what its proponent claims is thereafter a matter for the jury." *Id.*

 Here, Travelers' argument—which is centered around the document it proffers as

Appendix I—is unpersuasive because Travelers has failed to submit "sufficient proof so that a

reasonable juror could find" that the document is, in fact, part of the Subcontract—whether as an

appendix or rider to the Subcontract, as Travelers argues—or as an appendix to the Prime

Contract, as suggested by the text of the Subcontract itself. *El Gammal*, 831 F. App'x at 542. The

document is neither signed nor dated, and it is not physically part of either the Subcontract or the

Prime Contract. *See* Appendix I, ECF No. 28-24; *cf. Accredited Surety & Cas. Co., Inc.*, 2024

WL 1092681 at *2–3 (finding plaintiff submitted a valid and authenticated purchase order

identifying additional insureds where purchase order was signed by the party accepting the offer

and both parties to the purchase order behaved as if there were a contract between them). The document is not a self-authenticating document recognized in Rule 902, Fed. R. Ev., such as certain public records, periodicals, or business records. *Vayner*, 769 F.3d at 129–30. Both Travelers and Admiral have submitted the Subcontract and Prime Contract in support of their cross-motions for summary judgment. (*See* ECF Nos. 28-20–23, 34 (Prime Contracts); ECF Nos. 28-8, 31-17 (Subcontract).)[11] None of the versions of these contracts include Appendix I in any form, raising questions about how any insurance requirements set forth in Exhibit 15 to the Alzate  Declaration can be an appendix or rider to the Subcontract or can be otherwise incorporated in the Subcontract by virtue of being a part of the Prime Contract.

Moreover, Travelers fails to submit an affidavit from a witness with personal knowledge that the three-page document proffered as Appendix I is in fact part of the Subcontract as Travelers contends. Alzate attests that "Travelers received this copy of Appendix I to the Subcontract from Haugland in the course of its investigation of the claim at issue in the Underlying Actions." (Alzate Decl. ¶ 8.) Alzate thus suggests that Haugland told Travelers that Exhibit 15 to the Alzate Declaration is indeed an appendix to the Subcontract, but does not attest to having personal knowledge about the creation or execution of Appendix I. Alzate does not explain why, if Exhibit 15 to the Alzate Declaration is part of the Subcontract, it is not physically

---

[11] Admiral filed a document at Exhibit G to the Tsynman Declaration in support of its Motion for Summary Judgment and identified that document as the Prime Contract. (Tsynman Decl. ¶ 9.) On September 6, 2024, I observed that Exhibit G to the Tysnman Declaration did not appear to be the Prime Contract and I ordered Admiral to re-file any corrected Exhibit G by September 11, 2024. (Elec. Order, Sept. 6, 2024.) Admiral timely re-filed a corrected Exhibit G. (ECF No. 34.) The document appears to be a copy of the Prime Contract between LI Electric and LI Lighting and Haugland, though it also appears to be missing the last three pages of the contract as compared to the version submitted by Travelers. (*Compare* ECF No. 28-23 at 29–32 *with* ECF No. 34 at 285.)

attached to the Subcontract. Nor does Travelers offer a witness from Haugland to explain what the document is or how Haugland obtained it.

Travelers has failed to "produce evidence sufficient to support a finding that" Exhibit 15 to the Alzate Declaration, proffered as Appendix I, "is what the proponent claims it is," Fed. R. Ev. 901(a)—an appendix to the Subcontract (*see, e.g.*, Pl.'s Mem. ISO MSJ at 16)—and thus failed to authenticate the document as required. I therefore do not consider it in evaluating Travelers' Motion for Summary Judgment.

Because Exhibit 15 to the Alzate Declaration is not authenticated and therefore inadmissible for consideration in evaluating the parties' cross-motions for summary judgment, I deny the portion of Travelers' Motion for Summary Judgment that argues that Appendix I to the Subcontract requires additional insured coverage for Haugland and PSEG.

## II. The Subcontract's General Incorporation Clause Fails to Incorporate the Additional Insured Requirements of the Prime Contract by Reference.

The parties dispute whether the Subcontract's general incorporation clause incorporates by reference the additional insured requirements contained in the Prime Contract; Travelers argues that it does, Admiral argues that it does not. (*See* Pl.'s Mem. ISO MSJ at 18–19; Def.'s Mem. ISO MSJ at 11–13.) For the following reasons, as a matter of law, the general incorporation clause fails to incorporate the additional insured requirements contained in the Prime Contract. Therefore, I deny Travelers summary judgment and grant Admiral summary judgment on this point.

Traveler's argues that the Subcontract's general incorporation clause incorporates by reference the additional insured requirements set out at Section 14 of the Prime Contract and that, as a result, 4 Cut assumed the obligations to which Haugland agreed in the Prime Contract, which include additional insured coverage for LI Lighting, LI Electric, and "their successors and

assigns, as well as their agents, servants, representatives, employees, [and] shareholders[…] on a primary and non-contributory basis[.]" (Pl.'s Mem. ISO MSJ at 18–19 (citing Prime Contract § 14 *et seq.*, ECF No. 28-20 at 40).) In order to prevail on its Motion, Travelers must show that there is no genuine question of material fact that the Subcontract incorporates by reference the additional insured requirements of the Prime Contract and that these requirements obligate 4 Cut to provide additional insurance coverage on a primary and non-contributory basis to Haugland and PSEG.

In opposition, Admiral argues that the Subcontract does not incorporate by reference the additional insured requirements set out in Section 14 of the Prime Contract because the Subcontract does not specifically, expressly, or unambiguously incorporate these requirements. (Def.'s Opp'n to MSJ at 15–16.) Admiral asserts that the incorporation by reference language of the Subcontract relates only to the "scope, quality, character and manner of the work" covered by the Prime Contract and does not extend to the specific additional insured requirements, which are set forth in Section 14 of the Prime Contract. (*Id.* at 15–16.)

On reply, Travelers reiterates its argument that 4 Cut "expressly assumed" Haugland's obligations under the Prime Contract, "and was, therefore, contractually required to procure additional insured coverage for Haugland and PSEG." (Pl.'s Reply ISO MSJ at 3.)

Admiral also moves for summary judgment on this question, arguing that, as a matter of law, the Subcontract's general incorporation clause *does not* incorporate the additional insured requirements set forth in Section 14 of the Prime Contract. (Def.'s Mem. ISO MSJ at 2, 11–13.) Admiral reiterates its argument that the Subcontract does not clearly and unambiguously incorporate the additional insured requirements of the Prime Contract because these requirements are not "expressly and specifically stated" in the Subcontract. (*Id.* at 11.) For

Admiral to win summary judgment on this argument, it must show that there is no genuine question of fact that the Subcontract *does not* incorporate the additional insured requirements of the Prime Contract.

"The doctrine of incorporation by reference is grounded on the premise that the material to be incorporated is so well known to the contracting parties that a mere reference to it is sufficient." *Maines Paper & Food Serv., Inc. v. Keystone Assocs.*, 23 N.Y.S.3d 398, 400 (N.Y. App. Div. 2015). "[T]he paper to be incorporated into a written instrument by reference must be so referred to and described in the instrument that the paper may be identified beyond all reasonable doubt." *County of Rockland v. N.Y. State Pub. Emp. Rels. Bd*., 207 N.Y.S.3d 197, 201 (N.Y. App. Div. 2024). Under New York law, "incorporation clauses in a construction subcontract, incorporating prime contract clauses by reference into a subcontract, bind a subcontractor only as to prime contract provisions relating to the scope, quality, character and manner of the work to be performed by the subcontractor." *N.Y.C. Hous. Auth. v. Harleysville Worcester Ins. Co.*, 209 N.Y.S.3d 130, 134 (N.Y. App. Div. 2024) (holding that language in the subcontract incorporating the terms of the prime contract, which required the general contractor to add the owner as an additional insured under its policy, was insufficient to confer additional insured status on the owner with respect to the subcontractor's policy); *see also Amerisure Ins. Co. v. Selective Ins. Grp., Inc.*, No. 21-1516, 2023 WL 3311879, at *4 (2d Cir. May 9, 2023) (citing *Persaud v. Bovis Lend Lease, Inc.*, 941 N.Y.S.2d 208, 210–11 (N.Y. App. Div. 2012)) (same); *Lexington Ins. Co. v. Kiska Dev. Grp. LLC*, 122 N.Y.S.3d 590, 592 (N.Y. App. Div. 2020) (same); *City of New York v. Nova Cas. Co.*, 959 N.Y.S.2d 916, 917 (N.Y. App. Div. 2013) (same).

Courts find that a prime contract's insurance obligations are incorporated by reference into a subcontract where they are *expressly referenced* in the subcontract. For example, in *Carlisle SoHo East Trust v. Lexington Insurance Co.*, the Second Department of the New York Appellate Division found incorporation by reference where a sub-subcontract expressly stated that all insurance requirements set forth in the subcontract were binding on the sub-subcontractor and where the sub-subcontractor made specific revisions to the subcontract's provisions setting forth limits for umbrella coverage, but not to those concerning additional insured coverage, thereby demonstrating an intent to be bound by the additional insured provision. 852 N.Y.S.2d 118, 119 (N.Y. App. Div. 2008).

Here, the general incorporation clause of the Subcontract does not incorporate the additional insured requirements of the Prime Contract because it does not expressly reference them. (*See* Subcontract § 1.1, 1.2, ECF No. 28-8 at 17.) Instead, the general incorporation clause states that "the Prime Contract in its entirety is incorporated by reference and made part of this Subcontract as though set forth at length," and states that 4 Cut "is bound unto [Haugland] by the terms of" the Prime Contract "and will conform to and comply with it and assume toward [Haugland] all the obligations and responsibilities that [Haugland] assumes to Owner in and by the Prime Contract with respect to all aspects of the work called for herein and with respect to all obligations, duties, conditions and requirements related to the entire fulfillment and performance of the Prime Contract." (*Id.* § 1.1, ECF No. 28-8 at 17.) The general incorporation clause does not refer to the additional insured requirements set forth in Section 14 of the Prime Contract, although it makes specific reference to the Prime Contract's "administrative and procedural provisions [and] dispute resolution provisions." (*Id.* § 1.2., ECF No. 28-8 at 17.) Therefore as a matter of law, the general incorporation clause of the Subcontract does not incorporate by

reference the additional insured requirements set forth in Section 14 of the Prime Contract. *See County of Rockland*, 207 N.Y.S.3d at 201 (requiring "the paper to be incorporated into a written instrument by reference" to be described with specificity such that it "may be identified beyond all reasonable doubt"); *cf. Carlisle SoHo E. Tr.*, 852 N.Y.S.2d at 119 (finding incorporation by reference where agreement "expressly stated" that all insurance requirements in subcontract were binding on sub-subcontractor).

Accordingly, there is no question of fact that the general incorporation clause of the Subcontract does not incorporate by reference the additional insured requirements of the Prime Contract, and I deny Travelers summary judgment and grant Admiral summary judgment on this point. Because Travelers has failed to show that Haugland and PSEG are additional insureds under the Admiral Policy as a matter of law, I do not reach Travelers' arguments about whether Section 14 of the Prime Contract requires coverage for Haugland and PSEG or its arguments that coverage under the Admiral Policy is primary to the coverage under the Travelers Policy.

### III.    Section 7's Reference to the Insurance Requirements Contained in the Prime Contract is Ambiguous.

Admiral moves for summary judgment on the grounds that the reference in Section 7 of the Subcontract to the "Insurance Requirements 'Appendix I' contained within the Prime Contract" fails to incorporate the additional insured requirements of the Prime Contract because there is no Appendix I "contained within, annexed to, or otherwise made a part of the Prime Contract" or the Subcontract. (Def.'s Mem. ISO MSJ at 11–12.) In order to prevail, Admiral must show that there is no genuine question of fact that Section 7 of the Subcontract does not incorporate the additional insured requirements of the Prime Contract.

In opposition to Admiral's Motion, Travelers—for the first time in its briefs on these cross-motions—does "not contest that there is no Appendix 'I' to the Prime Contract" but instead

asserts that, "as clearly indicated in the Subcontract between Haugland and 4 Cut, the requirements set forth in Appendix 'I' are 'contained within the Prime Contract' . . . [t]hat is to say that the provisions in Appendix 'I' to the Subcontract come directly from the Prime Contract." (Pl.'s Opp'n at 5.) According to Travelers, this argument is "confirmed simply by comparing the 'INSURANCE' section of the Prime Contract to Appendix 'I' to the Subcontract"—referring to the document attached as Exhibit 15 to the Alzate Declaration. (*Id.*) Travelers asserts that "[t]he parties to the Subcontract clearly copied § 14, et seq. of the Prime Contract into an appendage to the Subcontract to ensure that the provisions contained therein would be incorporated into their agreement." (*Id.*)

On reply, Admiral reiterates the arguments made in opposition to Travelers' Motion that Exhibit 15 to the Alzate Declaration, which Travelers submits as Appendix I to the Subcontract, is inadmissible because it is not authenticated and argues that "[w]hether there is similar or identical language between" that document and Section 14 of the Prime Contract "is irrelevant." (Def.'s Reply ISO MSJ at 1–5.)

I have already found that Travelers cannot rely on Exhibit 15 to the Alzate Declaration because it failed to "produce evidence sufficient to support a finding that" this document proffered as Appendix I to the Subcontract "is what the proponent claims it is." Fed. R. Ev. 901(a); *supra* Discussion, Section I. Reading the Subcontract in the light most favorable to Travelers and drawing all inferences in its favor, I find that the reference in Section 7 of the Subcontract to "the Insurance Requirements 'APPENDIX I' contained within the Prime Contract" is ambiguous and raises a question of fact as to whether 4 Cut and Haugland intended 4 Cut to be obligated to provide additional insured coverage for Haugland and PSEG. (Subcontract § 7.2, ECF No. 28-8 at 23.) I therefore deny Admiral's Motion for Summary

Judgment on the argument that Section 7 fails to incorporate by reference the additional insured requirements of the Prime Contract.

"Ambiguity in a contract arises when the contract, read as a whole, fails to disclose its purpose and the parties' intent, or where its terms are subject to more than one reasonable interpretation." *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 37 N.E.3d 78, 80–81 (N.Y. 2015); *see also Greenfield v. Philles Recs., Inc.*, 780 N.E.2d 166, 173 (N.Y. 2002) ("[A]n ambiguity never arises out of what was not written at all, but only out of what was written so blindly and imperfectly that its meaning is doubtfull[.]"). "[T]he test to determine whether an insurance contract is ambiguous focuses on the reasonable expectations of the average insured upon reading the policy and employing common speech." *Universal Am. Corp.*, 37 N.E.3d at 80–81. While the interpretation of an unambiguous contract is a matter of law for the court, the resolution of ambiguity in a contract is for the trier of fact. *Long Island Minimally Invasive Surgery*, 212 N.Y.S.3d at 704.

Here, Section 7's references to "the Insurance Requirements 'APPENDIX I' contained within the Prime Contract" are ambiguous for two reasons. First, the plain language of these references "fails to disclose . . . the parties' intent" as to what specific insurance requirements Section 7 seeks to incorporate into the Subcontract. *Universal Am. Corp.*, 37 N.E.3d at 80–81. The references themselves do not describe the substance of any specific insurance requirements to which 4 Cut agrees to be bound or clearly refer to any specific language in the Prime Contract. Compounding this ambiguity is the fact that there is no "Appendix I" contained within or attached to the Prime Contract. Second, these references are "subject to more than one reasonable interpretation" because they could be reasonably understood by the average reader to refer to an appendix to the Prime Contract titled "Appendix I" that sets forth certain insurance

requirements, as Admiral suggests, *or* to restate verbatim in a separate document titled "Appendix I" the specific insurance requirements set forth in Section 14 of the Prime Contract, as Travelers suggests. This ambiguity means that it is not clear whether I should look for an "Appendix I" contained within or attached to the Prime Contract or whether there is some other document titled "Appendix I" that sets out the insurance requirements contained in the Prime Contract.

The extrinsic evidence put forward by Travelers supports the conclusion that Section 7 is ambiguous as to whether 4 Cut and Haugland intended to incorporate the additional insured requirements of Section 14 of the Prime Contract and require 4 Cut to obtain additional insured coverage for Haugland and PSEG. *See Long Island Minimally Invasive Surgery*, 212 N.Y.S.3d at 704 ("Extrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous, and such evidence is not admissible to create an ambiguity."). Travelers submits the 2020 Certificate of Liability Insurance "as extrinsic evidence of the parties' intent to provide coverage" to Haugland. (Pl.'s Mem. ISO MSJ at 17.)[12] The 2020 Certificate of Liability Insurance was produced by Construction Risk Partners and indicates that 4 Cut was covered by commercial general liability insurance and contractual liability insurance under Policy Number CA000031650-02 between August 2, 2019 and August 2, 2020. (ECF No. 28-8 at 33.) The 2020 Certificate of Liability Insurance states that "[Haugland] as contractor and [LI Lighting and LI Electric], as owner, as well as their subsidiaries and affiliates, their respective successors, assigns, agents, . . . and shareholders are additional insured as required by written contract." (*Id.*) This document suggests that 4 Cut *may* have understood its insurance obligations under the

---

[12] Travelers admits that the 2020 Certificate of Liability Insurance does not itself confer coverage. (Pl.'s Mem. ISO MSJ at 17.)

Subcontract to include the obligation to obtain additional insured coverage for Haugland and for the subsidiaries, affiliates, successors, assigns, agents, and shareholders of LI Lighting, which may, in turn, suggest that 4 Cut intended to incorporate the additional insured requirements of Section 14 of the Subcontract.

Because Section 7's reference to the insurance requirements contained in the Prime Contract is ambiguous, I deny the portion of Admiral's Motion for Summary Judgment that seeks judgment as a matter of law on the basis that Section 7 of the Subcontract does not incorporate the additional insured requirements of the Prime Contract.

### IV.   Section 14 of the Prime Contract Does not Require Additional Insurance Coverage for Haugland, but Does Requires Coverage for PSEG.

In support of its Motion for Summary Judgment, Admiral argues that Section 14 of the Prime Contract does not require additional insured coverage for Haugland or PSEG because they are not listed in the group of entities for whom additional insurance is required. (Def.'s Mem. ISO MSJ at 13–15 (quoting Prime Contract § 14.3, ECF No. 28-20 at 40).) According to Admiral, to the extent that the first half of Section 14.3, which uses more general language, differs from the second half, which uses more specific language, the more specific language controls. (Def.'s Mem. ISO MSJ at 14.) Admiral cites Section 2 of the Prime Contract titled "Order of Precedence" to argue that "in the event of a conflict . . . the most stringent requirement will take precedence . . . ." (*Id.* (quoting Prime Contract § 2, ECF No. 28-20 at 3).) For Admiral to prevail, the record must show that there is no genuine material question of fact that Section 14 of the Prime Contract does not require additional insured coverage for Haugland or PSEG.

In opposition, Travelers argues that Admiral's proposed reading of Section 14.3 "ignores all of the entities that qualify for additional insured coverage as 'subsidiaries,' 'affiliates,' 'successors,' and 'assigns' of [LI Lighting and LI Electric] . . . [and] is contrary to binding

authority." (Pl.'s Opp'n to MSJ at 4.) Travelers does not specify whether or how Haugland or

PSEG qualify for additional insured coverage via one of those relationships to LI Lighting or LI

Electric. (*See id.*) Instead, Travelers argues that the 2020 Certificate of Liability Insurance

"expressly identifies Haugland as an additional insured . . . and encompasses PSEG as an

'affiliate' and/or 'shareholder' of [LI Electric] . . . and/or 'agent' and/or 'assign' of [LI

Lighting]." (*Id.* at 4–5.) In support of its argument that PSEG is an affiliate and/or shareholder of

LI Electric, Travelers relies on the 2020 Certificate of Liability Insurance and Section 1.1 of the

Prime Contract, which states that LI Electric is a "wholly owned subsidiary" of PSEG. (*Id.* at 5

(citing ECF No. 28-8 at 33; Prime Contract § 1.1, ECF No. 28-21 at 55).) In support of its

argument that PSEG is an agent and/or assign of LI Lighting, Travelers relies on the 2020

Certificate of Liability Insurance and Section 4.15 of the Operations Services Agreement, which

sets out the circumstances under which PSEG acts as an agent of LI Lighting. (*Id.* (citing 2ECF

No. 28-8 at 33; Operations Services Agreement § 4.15, ECF No. 28-19).)

On reply, Admiral argues that the 2020 Certificate of Liability Insurance—which, it

argues, "does not even refer to PSEG"—is not properly considered as extrinsic evidence to the

Prime Contract and the Subcontract because there has been no finding that the text of the

contracts are ambiguous. (Def.'s Reply ISO MSJ at 5, 9.) Admiral also reiterates its argument

that the 2020 Certificate of Liability Insurance was executed *after* the motor vehicle accident that

gave rise to this dispute such that it cannot act as a "written insured contract" that requires

additional insured coverage under the Admiral Policy. (*Id.* at 5–6.) As to Haugland, Admiral

contends that "[S]ection 14 the Prime Contract does not require that [Haugland] be named as an

additional insured under any policy of insurance," and that Travelers has not "argued that

Haugland is a subsidiary, affiliate, successor, or assign of" LI Lighting. (*Id.* at 8.) As to PSEG,

Admiral argues that the record shows that "PSEG is the parent company of [LI Electric]," and

Section 14.3 "does not afford additional insured status to [LI Electric's] parent corporations."

(*Id.*) Admiral also argues that Travelers "has put forth no admissible evidence that PSEG is a

'subsidiary,' 'affiliate,' 'successor,' or 'assign' of [LI Electric or LI Lighting]" and that it could

not because "the evidence is to the contrary." (*Id.* at 8–9.)

Section 14.3 of the Prime Contract, which addresses Haugland's obligations to obtain

additional insured coverage, states:

> [a]ll liability insurance policies shall name [LI Lighting and LI Electric], their
> successors and assigns, as well as their <u>agents, servants, representatives,</u>
> <u>employees, shareholders, successors, and assigns,</u> as additional insured on a
> primary and non-contributory basis and [Haugland] shall maintain the required
> coverage, naming the [LI Lighting and LI Electric] as well as their <u>agents,</u>
> <u>servants, representatives, employees, shareholders, successors, and assigns</u> as an
> additional insured, for a period of not less than three (3) years from the date the
> Company accepts the Work. The following language should be used when
> referencing the additional insured status: Long Island Lighting Company d/b/a
> LIPA and Long Island Electric Utility Servco LLC, as well as their <u>subsidiaries</u>
> <u>and affiliates, and their respective successors and assigns</u> shall be named as
> additional insured.

(Prime Contract § 14.3, ECF No. 28-20 at 16 (emphasis supplied).)

As an initial matter, I decline to adopt Admiral's reading of Section 14.3 for two reasons.

First, Admiral has not shown that the two sentences of Section 14.3 conflict. (*See* Def.'s Mem.

ISO MSJ at 14 (arguing that "to the extent that there is a conflict between the first and second

sentences of" Section 14.3, the second sentence governs).) Second, Admiral's approach would

read out the first, long sentence of Section 14.3, which contains the following terms not repeated

in the second sentence: agents, servants, representatives, employees, and shareholders. "It is a

well settled principle of contract law that a court should not adopt a construction of a contract

which will operate to leave a provision of a contract without force and effect." *Piccirilli v.*

*Yonaty*, 167 N.Y.S.3d 621, 624 (N.Y. App. Div. 2022) ("An interpretation that gives effect to all

the terms of an agreement is preferable to one that ignores terms or accords them an unreasonable interpretation."). Therefore, I decline to adopt Admiral's reading of Section 14.3 and will consider whether Haugland or PSEG qualifies as an additional insured under the entire provision as a matter of law.

    A.   <u>Haugland is not Entitled to Additional Insured Coverage Under Section 14 of the Prime Contract.</u>

The plain text of Section 14.3 shows that Haugland is not listed among the entities that must be covered as additional insureds under that provision. The only evidence that Travelers cites in an attempt to raise a question of fact that Haugland is "encompassed" by Section 14.3 is the 2020 Certificate of Liability Insurance. (Pl.'s Opp'n to MSJ at 4–5 (arguing that the 2020 Certificate of Liability Insurance "expressly identifies Haugland as an additional insured").) Because Travelers does not argue or establish that the Prime Contract is ambiguous, I do not consider extrinsic evidence, including the 2020 Certificate of Liability Insurance, in interpreting the language of the Prime Contract. *See Long Island Minimally Invasive Surgery*, 212 N.Y.S.3d at 704. Reviewing the record in the light most favorable to Travelers and drawing all inferences in its favor, I find that there is no question of fact that Haugland is *not* entitled to additional insured coverage under Section 14.3 of the Prime Contract, and I grant Admiral summary judgment on this issue.

I now consider whether the record demonstrates a genuine question of material fact as to whether PSEG qualifies for additional insured coverage under the Prime Contract as an affiliate, agent, assign, employee, representative, servant, shareholder, or subsidiary of LI Lighting or LI Electric.

B.   <u>There is a Question of Fact as to Whether PSEG is an Affiliate of LI Electric.</u>

The record reflects a question of fact as to whether PSEG is an "affiliate" of LI Electric

and, therefore, entitled to additional insured coverage under Section 14.3 of the Prime Contract.

The Prime Contract states that LI Electric is a "wholly-owned" subsidiary of PSEG. (Prime

Contract § 1.1, ECF No. 28-21 at 55.) The parties do not identify a definition of the term

"affiliate" in the Prime Contract. The ordinary and common meaning of "affiliate" is a person or

entity that is "closely associated with another typically in a dependent or subordinate position."

*Affiliated*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/affiliated

(last visited Sept. 16, 2024). It is unclear from the record whether, as its parent company, PSEG

is "closely associated" with LI Electric and therefore an "affiliate" such that it is entitled to

additional insured coverage under Section 14.3 of the Prime Contract. Therefore, I deny Admiral

summary judgment on its argument that PSEG is not an affiliate of LI Electric.

C.   <u>PSEG is not an Agent of LI Lighting.</u>

Travelers attempts to raise a question of fact as to whether PSEG is an "agent" of LI

Lighting under Section 14 of the Prime Contract by citing to Section 4.15 of the Operations

Services Agreement. (Pl.'s Opp'n at 5.) In response to the same argument made in Travelers'

affirmative Motion, Admiral argues that Travelers cannot rely on the Operations Services

Agreement because the version it submitted is inadmissible as it is not executed or accompanied

by an affidavit by a witness with personal knowledge about its execution. (Def.'s Opp'n to MSJ

at 13–14.) Because Travelers relies on the Operations Services Agreement in its opposition to

Admiral's Motion, I will resolve the parties' disputes as to the document's admissibility.

The Operations Services Agreement meets the authentication standard because Travelers

has "produce[d] evidence sufficient to support a finding that the item is what the proponent

claims it is," Fed. R. Ev. 901(a), such that "a reasonable juror could find in favor of authenticity

34

or identification," *El Gammal*, 831 F. App'x at 542. Admiral does not elaborate on how the

Operations Services Agreement is not executed. To the extent that Admiral means that the

document is unsigned, Admiral is incorrect; the document is titled "Executed Version," dated

December 21, 2013, and is signed by both parties to the contract, LI Lighting and PSEG.

Operations Services Agreement at 1, 98–99, ECF No. 28-19; *see Execute*, Black's Law

Dictionary (12th ed. 2024) (defining "execute" as, among other definitions, "making (a legal

document) valid by signing"); *10 Ellicott Square Ct. Corp. v. Mountain Valley Indem. Co.*, 634

F.3d 112, 120 (2d Cir. 2011) ("New York courts employ the standard indicated by the definition

in Black's, requiring that a contract be either signed or fully performed before it can be

considered executed."). It is true that the Alzate Declaration does not offer sworn statements by a

witness with personal knowledge as to the document's execution, but such statements are not the

only means of authenticating evidence. *See, e.g.*, Rule 901(b)(4) (permitting consideration of the

"appearance, contents, substance, internal patterns, or other distinctive characteristics of the item,

taken together with all the circumstances.") Moreover, Alzate attests that the Operations Services

Agreement is publicly available (Alzate Decl. ¶ 2 n.1), and my comparison of the version

submitted in support of Travelers' Motion with the publicly available version does not reveal

discrepancies between the two.[13] *See Vayner*, 769 F.3d at 130 (noting that "the proponent need

not rule out all possibilities inconsistent with authenticity, or prove beyond any doubt that the

evidence is what it purports to be."). In light of the fact that the Operations Services Agreement

is signed by both parties, dated, marked executed, and publicly available, I find that it has met

---

[13] *Compare* Operations Services Agreement, ECF No. 19 *with* Amended and Restated
Operations Services Agreement between Long Island Lighting Company d/b/a LIPA and PSEG
Long Island LLC (Dec. 31, 2013) (https://www.lipower.org/wp-
content/uploads/2016/10/OSA.pdf).

the authentication standard under Rule 901 and is therefore properly considered on summary judgment.

Under the Operations Services Agreement, PSEG is engaged "as an independent contractor []except where [PSEG] is appointed as [LI Lighting's] agent." (Operations Services Agreement § 3.1(B), ECF No. 28-19 at 18.) The document states that PSEG is designated as LI Lighting's agent in the following circumstances:

> (a) to enter into purchase, rental and other contracts on behalf of and for the account of [LI Lighting] necessary or appropriate to properly operate and maintain the T&D System and to maintain the records of [LI Lighting], and to make such additions and extensions (other than those made pursuant to Section 4.2(A)(7)) hereof to the T&D System and (b) to enter into certain customer related contracts under [LI Lighting's] tariff, all as may be required from time to time by [LI Lighting].

(*Id.* § 4.15, ECF No. 28-19 at 47.) In other words, PSEG's authorization to act as LI Lighting's agent is limited to entering into certain contracts for specific purposes set out in the agreement. Unless PSEG is entering into such contracts, it is not acting as LI Lighting's agent under the Operation Services Agreement.

Aside from the Operations Services Agreement, Travelers has not submitted any evidence of PSEG entering into contracts in the course of its involvement in the events of the underlying actions, let alone contracts for the specific purposes set out in the Operations Services Agreement. Indeed, PSEG did not enter into the Prime Contract with Haugland; LI Lighting did. Therefore, the record reflects no genuine question of material fact that PSEG was not acting as an agent of LI Lighting pursuant to the Operations Services Agreement such that it is entitled to additional insured coverage under the Prime Contract. Accordingly, I grant Admiral summary judgment on this issue.

D.  PSEG is not an Assign of LI Lighting.

Travelers attempts to raise a question of fact as to whether PSEG is an "assign" of LI

Lighting under Section 14 of the Prime Contract by citing to Section 4.15 of the Operations

Services Agreement. (Pl.'s Opp'n at 5.) Section 4.15 does not refer to or describe any "assign" of

LI Lighting at all, let alone establish that PSEG is an assign of LI Lighting. (*See* Operations

Services Agreement § 4.15, ECF No. 28-19 at 47.) Because the record reflects no genuine

question of material fact as to whether PSEG is an assign of LI Lighting, I grant Admiral

summary judgment on its argument that PSEG is not an assign of LI Lighting.

E.  There is a Question of Fact as to Whether PSEG is a Shareholder of LI
    Electric.

The record shows a question of fact as to whether PSEG is a "shareholder" of LI Electric.

Under Attachment 3 Section 1.1 of the Prime Contract, LI Electric is a "wholly-owned

subsidiary" of PSEG. (Pl.'s Opp'n at 5 (citing Prime Contract § 1.1, ECF No. 28-21 at 55).) The

term "wholly-owned subsidiary" is not defined in the Prime Contract. According to the SEC, a

"wholly-owned subsidiary" "means a subsidiary substantially all of whose outstanding voting

shares are owned by its parent and/or the parent's other wholly owned subsidiaries." 17 C.F.R.

§ 210.1-02(aa). Since LI Electric is a "wholly-owned" subsidiary of PSEG, PSEG and/or one or

more of PSEG's other wholly owned subsidiaries owns substantially all of LI Electric's

"outstanding voting shares." Therefore, there is a question of fact as to whether PSEG is a

"shareholder" of LI Electric and is, as a result, entitled to additional insured coverage under

Section 14.3 of the Prime Contract. Accordingly, I deny Admiral summary judgment on this

point.

F.   PSEG is not a Subsidiary of LI Electric.

As discussed, the Prime Contract states that LI Electric is a "wholly-owned" subsidiary of

PSEG. (Prime Contract § 1.1, ECF No. 28-21 at 55.) As a result, PSEG does not qualify for

additional insured coverage under Section 14.3 of the Prime Contract as a subsidiary of LI

Electric. Therefore, I grant Admiral summary judgment on this issue.

G.   There is a Question of Fact as to Whether PSEG is a Representative of LI
     Lighting or LI Electric.

Travelers submits no evidence to raise a question of fact as to whether PSEG is an

employee, representative, or servant of LI Lighting or LI Electric such that it qualifies for

additional insured coverage. (*See generally* Pl.'s Opp'n to MSJ.) The parties do not identify a

definition of these terms in the Prime Contract. Based on my review of the record, I see no

question of fact as to whether PSEG is an employee or servant of LI Lighting or LI Electric. The

record does, however, raise a genuine question of material fact as to whether PSEG is a

representative of LI Electric based on the fact that it is the parent company of LI Electric.

Therefore, I grant Admiral summary judgment on the point that PSEG is not an employee or

servant of LI Lighting or LI Electric and deny it on the point that PSEG may be a representative

of LI Electric by virtue of being its parent company.

**V.   A Determination on Admiral's Duty to Indemnify Haugland or PSEG is
      Premature.**

Admiral also moves for summary judgment on the duty to indemnify, arguing that it is

under no duty to indemnify Haugland or PSEG absent a determination that those entities are

additional insureds. (Def.'s Mem. ISO MSJ at 15–16.) In the alternative, Admiral argues that if I

find that it has a duty to defend Haugland and/or PSEG, a finding as to the duty to indemnify is

premature until there is a determination of fault in the underlying actions. (*Id.*)

As discussed above, there are genuine questions of material fact that preclude summary judgment on a determination that Haugland and PSEG are additional insureds under the Admiral Policy, which is a threshold issue to whether Admiral has a duty to indemnify those parties. *See supra* Discussion, Section III. Genuine questions of material fact also preclude summary judgment on a determination that PSEG is entitled to additional insured coverage under Section 14 of the Prime Contract. *See supra* Discussion, Section IV.B, IV.E, IV.G. Therefore, a determination of Admiral's duty to indemnify is premature. Accordingly, I deny without prejudice Admiral's Motion for Summary Judgment on the duty to indemnify.

## CONCLUSION

For the reasons stated above, genuine questions of material fact preclude a determination as to whether Haugland and PSEG are additional insureds under the Admiral policy issued to 4 Cut and as to whether PSEG is entitled to additional insured coverage under Section 14 of the Prime Contract as an "affiliate," "shareholder," or "representative" of LI Electric. I also find that Haugland is not entitled to additional insured coverage under Section 14 of the Prime Contract. Accordingly, I deny Travelers' partial Motion for Summary Judgment (ECF No. 28) and grant in part and deny in part Admiral's Motion for Summary Judgment (ECF No. 31).


Dated: Central Islip, New York
September 19, 2024

_____
        */s/ Nusrat J. Choudhury*
        NUSRAT J. CHOUDHURY
        United States District Judge